The next matter on for argument is United States v. Morillo. Mr. Anderson, we're going to wait just for the room to clear out so that we can give you our full attention. Thank you, Your Honor. May it please the Court. I'm Lucas Anderson here for the appellant, Luis Morillo. At the sentencing hearing in this case, the District $1,000,000 offense level enhancement for loss amount enhancement. Even though . . . We've read your papers and we'll let you get back to that, but let me just, sorry, make sure I'm understanding why I think you are here, notwithstanding the fact that I invited you to come in, which I thank you for honoring. You're on the CJA panel, appellate panel. Correct. You've been assigned to this case, you weren't counsel below. Correct. All right. And you've identified an issue or a set of issues that you think entitle your client to bail. Correct. And your problem is that in order to comply with the rule and make a motion before the Northern District of New York, you have determined that it is impossible or very difficult for you to be admitted pro agmenta up there to make the motion. Am I with you? Do I understand that? To an extent. With respect to that last part, I will say that there are administrative steps that need to be taken in order for me to be able to literally file the motion on Mr. Murillo's behalf in the Northern District. And once I received the sentencing transcript and saw the scope of the procedural errors that I identified and saw how much time Murillo had left to serve on his sentence and read the hoach of our opinion and determined that this court, in my opinion, is not in any worse position to decide the motion than the district court would have been, I'd filed the motion in this court instead of the district court. Instead of waiting for that administrative process to be admitted to the Northern District and then going through that process there while Murillo's time is running, while his sentence, you know, according to our calculations, he would have been out either now or in the very near future if he had been sentenced according to the proof that was actually before the district court in connection with the sentencing process. And so that's why it's filed here. All that we're really asking the court to do with respect to that is to extend the reasoning presented in the last page of the hoach of our opinion to a case like this where full briefing and argument isn't really necessary for this court to identify and decide whether there's a substantial question on appeal. It jumps out from the record. You sound like you've proceeded down the path pretty well to full briefing and certainly you're prepared to make that argument at least orally in front of us. How quickly can you have a brief filed? By the middle of next week. How quickly can the government respond? Your Honor, I'd say three to four weeks if that's possible. How about one? A single week. Yeah, I mean, you've put in a nice opposition to this and sort of raised some issues, although I know you've addressed the issue of likelihood of sticking around. In fairness to the government, I also want to point out that there's another procedural error that with respect to the district court's explanation of the sentence imposed. I don't see why that would take so much more time for either side to brief given the district court's transcript, but I don't want to sandbag the government when they have a tight deadline. All right. Is it really impossible for a motion to be made before the district court whether you are the attorney representing him as movement or whether other counsel is brought in, CJA appointed counsel, to make the motion in front of the district court? If Mario could have CJA counsel in the northern district appointed to represent him quickly, to file the motion with the district court very quickly, then yes, but I have contacted clerks in the northern district. I have contacted CJA office here in the Second Circuit to try and find a way to get me to file on his behalf as quickly as possible in the northern district. You know, the admission process in the northern district, I don't know how long that takes. Listen, I mean, I certainly, I think we all appreciate sort of the bind you find yourself in on behalf of your client and appreciate the work you're doing, certainly appreciate the work you're doing for Mr. Mario. All right. Well, go ahead. Why don't you proceed at least with the merits of this argument about why he should be entitled to appeal? Well, with respect to the loss amount enhancement, as you've identified, I've presented some substantial arguments in our brief with respect to that. It was preserved by Mario himself, if not by his attorney, with the letter that he submitted and that was docketed on the district court's docket before sentencing where he reminded the district court of the fact that I, Mario, had specifically allocated to jointly undertaking criminal activity involving a loss amount of $200,000, not the $2.8 million that he was sentenced according to in the absence of any proof. And so we think there's a substantial question there at the very least. With respect to the risk of flight question, I think . . . Did the district court address that at all in its sentencing allocution? I just don't remember. No. Okay. There was no argument . . . Well, the issue wasn't really raised, was it? No. I mean, the defense lawyer didn't argue that, didn't raise the loss amount issue. Correct. There was a role and offense argument. In the context of arguing role and the offense, he said that your client didn't have an understanding of the total scope of the criminal activity. But I don't think anybody focused on the, what is it, $2.8 million? I don't think anyone focused on that at sentencing. Mario himself did. He submitted a pro se submission once he realized that his defense counsel was only going to be arguing something with respect to a mitigating role adjustment, which was the defense's burden to prove at the time. And so Mario sent a letter, had his girlfriend fax it and file it with the district court. It was docketed before sentencing in which he specifically reminded the court, I pleaded guilty to a $200,000 offense. And the reason I did that was because that was all that I had agreed to, all that I was . . . all that I had known about with respect to this offense. And under the 1B1.3 sentencing guideline section, it discusses the scope of what's called jointly undertaken criminal activity and how a defendant's relevant conduct in a conspiracy is limited to his own agreement. The application notes to that section make that very clear. And so does this court's opinion in Studley, which we cited too in our principal brief. I see that my time is far beyond gone if there's . . . One question. If you're successful in the appeal, the result would be, would it not a remand to the district court for resentencing? Correct. And on that remand, would the government . . . would it not be open to the government to submit evidence that it had not submitted before? Correct. So how can we predict that even a successful appeal would result in a sentence reduction of such a nature that the only fair thing to do is to let Mr. Murillo out on bail at this point? Well, if that were the standard, I'm not sure when bail would ever be appropriate, the fact that the government could possibly introduce some more evidence that we don't have. Well, no. Many times . . . many times the issue that's being presented on appeal would lead to dismissal of the indictment or to judgment as a matter of law in the defendant's proceedings. But here, we've got a highly discretionary decision by the district court. And if there's an incomplete record now, it's a little hard to predict. I mean, the point . . . I think the thing that gives power to the bail application to some degree is the notion, as you ably urge, that unless he is allowed to be out, the time is just ticking away on a sentence that's going to be reversed. But it's altogether possible, is it not, that the time is ticking away on a sentence where when it goes back, you know, it's not clear why he should be out on bail at that point any more than he would have been pending sentence in the first place? That's correct, Your Honor. But the 3143B statute speaks specifically to a likelihood of a reduced sentence that's less than the expected duration of the appeal process. And here, given the extent, the magnitude of that loss amount enhancement itself . . . Yes. How can we predict what the . . . whether that's true? The only way that we can predict that now is the fact that the government did not introduce any evidence with respect to that, despite the fact that Murillo had made a point during his own plea allocution of pleading only to that. The government and the defense counsel and the district court discussed that at the plea hearing. Oh, we'll talk about money at the time of sentence. But the government was well aware that Murillo was disputing that it was anything more than $200,000 and the government failed to present any evidence after that. But the other aspect of this is that doesn't it have to be clear in convincing evidence he's not going to flee? Correct. And given what's in the record about bench warrants and failures to appear and so forth, false identity, that's a pretty difficult standard for you to meet here, isn't it? No, Your Honor, because at this point, the circumstances are far different than they were in January of 2017 . . . Oh, he still has a year left on his sentence, right? He still has less than a year left on his sentence, but he served the majority of his sentence. But the circumstances in general are different than they were before he pleaded guilty when he was told by the district court, oh, you're facing a maximum of 20 years imprisonment. And I'll note that the district court, even at that detention hearing, which the government submitted to the court, on page 22 said, quote, this is somewhat of a close call at the time. And I'll also note with respect to his prior bench warrants, three of those were issued for a case that took place in 2007 . . . when he was 17 years old and he was eventually convicted of a New York City administrative code violation. Now, he should have shown up to court. That's . . . we're not making any arguments about that. But, when he was a teenager, facing an administrative code violation conviction, it's different now that he's served the majority of a federal sentence, especially when we account for good time credits that he's already accrued. The risk of flight here is drastically different than it was at the time the initial detention hearing was held. The problem is, I think, at least for me, on the analysis of that issue is . . . it's the district court before whom your client has appeared on a regular basis, who has certainly a much more fulsome knowledge of what's been going on and can take evidence with respect to that issue. Something that we would find it difficult to do. Well, the evidence is in the pre-sentence report with respect to, you know, more current information than was in the pretrial services report. I mean, I understand what your argument is, Mr. Anderson. Let me just ask you this. The government has indicated in its reply that it would not oppose our referring this motion, essentially, to the Northern District of New York with an instruction that you be permitted to represent your client there. Correct. And, that was the alternative relief we requested in our initial filing. All right. If there are no further questions . . . Thank you. I'll stand down. Thank you. Good morning. May it please the court. Just to reiterate, the government would not oppose any expedited scheduling here for the merits of this case. But, we do believe that this is not the right forum for his motion for a number of reasons. Having been convicted of a sophisticated fraud conspiracy, Mr. Murillo now has the burden to overcome a presumption under 3143 that he be detained pending appeal. And, as pointed out, he must show clear and convincing evidence that he's not likely to flee or present a danger to the community. To find this here, the court would essentially have to reverse the considered findings of Magistrate Judge Baxter, who twice, after holding a detention hearing, ordered Mr. Murillo detained, finding that he was a flight risk for a number of reasons. He's engaged in identity theft, both past and in this case. He evaded arrest on this charge for several months. He did that previously, as well, in the past. The court found he had strong ties to the Dominican Republic, but not very strong ties to New York. And, he has a history of drug abuse. All those findings were considered very carefully by the magistrate judge. And, there's just, given the presumption now, there's no basis to find, in this court, that he's presented clear and convincing evidence that he would not flee. Turning, then, to the other side of the coin here, Mr. Murillo must now establish a substantial claim that would be likely to result in a sentence that is less than the time he's already served, plus the expected duration of the appeal process. Again, the government would emphasize that we would be entirely willing to expedite the appeal process in light of the concerns raised by Mr. Murillo about the remaining time he has. But, Mr. Murillo's repeated claim that there's no evidence here to support the district court's loss determination is not correct. Well, the judge didn't make any finding about the $2.8 million. I mean, the district judge. And, this is in a context where the man, at the time of his plea, was very careful to say, I only knew about $200,000. He then sends a letter or makes a pro se submission at sentencing, again reiterating $200,000. And, I don't think the district court judge addressed the issue of whether it was $200,000 or $2.8 million. Not expressly, Your Honor. He, as far as the total loss amount, we may point this out in our brief, that was not contested by the defendant, the $2.8 million total. It's whether he could be accountable for the full amount. And so, Your Honor is correct that there's no express findings at sentencing. The issues were not raised directly, as you have pointed out. The issue kind of got muddied by the mitigating rule arguments. But, the government did address the foreseeability of the loss amount in its sentencing memo, which was considered by the district court. And, here, on appeal, I think Mr. Murillo has acknowledged he would have to establish plain error. And so, there would have to be a clear and obvious error here by the district court in adopting the district court's, sorry, the PSR's determination of loss, which the district court did. And, the standard here is whether the defendant knew or reasonably should have known that the pecuniary harm was a potential result of the offense. Mr. Murillo repeatedly says, well, look at what I said in my plea. And, it's very important to do that. Because, in his plea, he said, I knew, first of all, that the computer was going to be used in the incident, in the conspiracy. And, he also said, I agreed to participate and also to submit returns to complete the conspiracy. Now, he said, I only, you know, thought this was a $200,000 scheme. But, this completely contradicts his later claims that, look, all I did was just go up to Syracuse and help pull out stuff from the mail. He admitted to submitting these false returns to the IRS. And so, that also contradicts his later denials in his request for acceptance of responsibility. He said, look, I hadn't, you know, all I did was pull things out of the mail. So, based on that, the district court could have rejected the idea, his efforts to limit his liability of $200,000. He also essentially admitted to knowing how the scheme operates. And, the scheme only operated in one way. The $2.8 million was all generated by the same modus. It was finding people's identities in Puerto Rico, finding addresses in Syracuse and Binghamton, and then generating false returns based on computer research of Fortune 500 companies to find their addresses as the purported employers. It was all the same modus. And so, I think on those, having admitted to providing the computer to Mr. Mejia to be used in the offense to steal identities, having admitted being involved in the submission of the false tax returns, having admitted to knowing the scheme would be extensive because $200,000 is not a little amount, and having admitted to being involved in the retrieval of the checks, I don't think you can find that it was clear and obvious error that the district court determined that he could have foreseen or should have known that the scheme was going to generate much more than $200,000. The other thing to point out here is that Mr. Murill has now been convicted in New York State Court of possession of a false identity document, I believe is the charge. That would raise his criminal history Category 2 and any resentencing. So, if you... That conviction is final, Mr. Mejia? Yes. And your Honor, before I forget, this is at the risk of perhaps subverting the Honor's point that you don't have full information. I have the pretrial services report that the magistrate judge looked at, and I have copies. If the court is interested, I can provide those to the court. Otherwise, that can be addressed at a later time.  So, any sentencing, and he says it's only $200,000. $500,000 in checks were recovered going to Syracuse and Binghamton. There was another $400,000 that were actually negotiated. We do not have information about who negotiated those checks, but even if the district court were to hold Mr. Murill should have foreseen some of that $400,000 plus the $500,000 in the checks that are actually being into Syracuse. His loss amount would put him in a category with criminal history, too, that includes the sentence that he received. So, it's not a likelihood here, I think, that he can't establish a likelihood that he would receive a lower sentence. But again, the government would not oppose any expedited briefing schedule here to address his concerns. Thank you, Mr. Dixon. Mr. Anderson, let me just ask you a couple of questions. You're admitted here in our court, obviously. Correct. And in Southern District and Eastern District? Correct. Okay. Great. Unless my colleagues have any further questions. Thank you both. We'll get you a decision shortly.